IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

GLOBAL HUB LOGISTICS, *et al.*,   )
                )
  Plaintiffs,       )
                )
  v.           )   Case No. 1:12-cv-1350 (GBL/IDD)
                )
TAMERLANE GLOBAL    )
SERVICES, INC. *et al.*,     )
                )
  Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiffs Global Hub Logistics ("Global") and

Masud Roshan's Motion to Strike Defendants' Answer and Counterclaims and for Sanctions.

(Doc. 26.) This case concerns breach of contract, defamation, and unjust enrichment claims by a

military sub-contractor against a logistics services company. Defendants Tamerlane Global

Services, Inc. ("Tamerlane") and James O'Brien, Tamerlane's president and chief executive

officer, filed counterclaims alleging breach of contract, tortious interference with contractual

relations, tortious interference with business expectancy, defamation, conspiracy, and statutory

business conspiracy against Plaintiffs. There are three issues before the Court.

The first issue is whether the language of a term sheet listing the proposed settlement

provisions of a prior and substantially similar action, signed by all parties, bars Defendants' tort

counterclaims in the present action. The Court holds that the term sheet does not prohibit

Defendants' introduction of their tort counterclaims in the present action because the term sheet

is a non-binding "agreement to agree." Where a term sheet simply reflects the intention of the

parties to agree on a final settlement at a later date, it is merely an "agreement to agree" and not a

binding contract. Thus, the Court denies the Motion to Strike on the ground that the term sheet is not binding, and therefore, not enforceable.

The second issue is whether Defendants' tort counterclaims are barred by a decision of this Court in the prior action. The Court holds that Defendants' tort counterclaims are not barred in the present action. The Court's decision to bar the tort counterclaims in the prior action was based on procedural considerations, not the merits of the claims. Thus, the Court denies the Motion to Strike on the ground that Defendants' tort counterclaims are not claim precluded.

The third issue is whether Defendants' action in filing their Answer with their tort counterclaims in the present case is worthy of sanctions. The Court holds that sanctions would not be appropriate in this case. Sanctions are warranted where a party has acted in bad faith by abusing the court system or exhibiting "vexatious conduct." Defendants did not exhibit bad faith by filing their tort counterclaims in the present case because the claims were not excluded by either the term sheet or claim preclusion doctrine. Thus, the Court denies the Motion for Sanctions on the ground that Defendants did not act in bad faith.

## I. BACKGROUND

Plaintiff Global Hub Logistics is an Afghan corporation engaged as a logistics services sub-contractor transporting goods and materials between Pakistan and Afghanistan for the United States military. (Compl. ¶ 4, Doc. 1.) Plaintiff Masud Roshan ("Roshan") was President of Global during the events that form the basis of this action. (Compl. ¶ 5.) Defendant Tamerlane is a global logistics services company incorporated in Virginia. (Compl. ¶ 6.) Defendant James O'Brien ("O'Brien") is the President and Chief Executive Officer of Tamerlane. (Compl. ¶ 7.) This is the second of two lawsuits filed by Global against Tamerlane arising from the same underlying facts regarding the parties' contractual relationship. (*See* Pls.'

Mem. Supp. Mot. Strike Answer and Countercls. and for Sanctions at 1-2, Doc. 27 [hereinafter
"Pls.' Mem."].) The provisions of the parties' agreed-upon term sheet and the Court's orders in
a prior lawsuit between the parties form the basis of Plaintiffs' instant Motion.

### Global's First Lawsuit

Plaintiffs filed the prior action ("First Lawsuit") in this Court in October 2011. (*See*
Complaint, *Global Hub Logistics v. Tamerlane Global Servs.*, No. 1:11-CV-1113, (E.D. Va. Oct.
13, 2011), No. 1.) In the first lawsuit, Plaintiffs alleged breach of duty of good faith and fair
dealing, breach of contract, aiding and abetting breach of contract, conversion, defamation, and
tortious interference. After multiple amendments and motions to dismiss, Plaintiffs' final
amended complaint sought relief for breach of contract, defamation, and unjust enrichment. (*See*
Third Amended Complaint ¶¶ 35-68, *Global Hub Logistics v. Tamerlane Global Servs.*, No.
1:11-CV-1113 (E.D. Va. June 4, 2012).) The parties voluntarily dismissed the First Lawsuit,
without prejudice, the night before trial, having signed a term sheet outlining the provisions of a
possible settlement agreement. (Pls.' Mem. at 3.)

Plaintiffs asserted both contract and tort claims in both their original complaint in the
First Lawsuit and their amended complaint in that action. (*Id.* ¶¶ 17-38.) In their Answer to the
Amended Complaint, Defendants answered Plaintiffs' contract allegations and successfully
moved to dismiss Plaintiffs' tort claims, yet asserted counterclaims only in contract. (*See*
Answer, *Global Hub*, No. 1:11-CV-1113 (E.D. Va. Dec. 22, 2011), Doc. 28.) The Court granted
Plaintiffs leave to file a Second Amended Complaint, in which they again asserted both contract
and tort claims. (*See* Second Amended Complaint, *Global Hub*, No. 1:11-CV-1113, (E.D. Va.
Mar. 19, 2012), Doc. 50.) In response, Defendants' Answer to the Second Amended Complaint
asserted tort counterclaims for the first time. (*See* Answer, *Global Hub*, No. 1:11-CV-1113

(E.D. Va. Apr. 2, 2012), Doc. 57.) In ruling on Plaintiffs' motion to dismiss Defendants' tort counterclaims, the Court held that Defendants could only pursue their contract counterclaims because Defendants had deliberately not introduced the tort counterclaims in a timely fashion earlier in the litigation. (*See* Order, *Global Hub*, No. 1:11-CV-1113 (E.D. Va. May 24, 2012), Doc. 103.) Following the Court's ruling, Defendants did not attempt to again raise their tort counterclaims in their Answer to Plaintiffs' Third Amendment Complaint. (Pls.' Mem. at 2.) Plaintiffs' Third Amended Complaint sought relief for breach of contract, defamation, and unjust enrichment. (*See* Third Amended Complaint, *Global Hub*, No. 1:11-CV-1113 (E.D. Va. June 4, 2012), Doc. 118.)

Ultimately, Plaintiffs voluntarily dismissed the First Lawsuit after the parties signed a term sheet on the eve of trial. (Pls.' Mem. at 2-3.) The term sheet listed tentative terms that would be part of a future settlement agreement among the parties. (*Id.* at 2-3.) In the term sheet, all parties stated they would put forth "their best efforts" in the next thirty days to reach a settlement. (*Id.* at 4.) In addition, Paragraph Ten of the term sheet provided that if a settlement agreement was not finalized within thirty days, "all parties agree[d] to refile only the currently operative pleadings . . . and to stipulate to the Court that . . . the case is trial-ready." (*Id.* at 3.)

**Global's Second Lawsuit**

Plaintiffs refiled the present action in November 2012, again raising both contract and tort claims. (Doc. 1.) Plaintiffs again allege breach of contract, defamation, and unjust enrichment claims against Defendants. (Compl. ¶¶ 35-68.) Plaintiffs contend that Defendants refused to pay Plaintiffs for services rendered and tarnished Plaintiffs' professional reputations among other contractors and logistics professionals in Afghanistan. (*Id.*) Defendants responded in their Answer with counterclaims in both contract and tort. (Doc. 16.) Defendants' claims

allege breach of contract, tortious interference with contractual relations, tortious interference with business expectancy, defamation, conspiracy, and statutory business conspiracy counterclaims against Plaintiffs. (Answer and Countercls. ¶¶ 38-75, Doc. 16.) Defendants contend that Plaintiffs failed to complete the work for which Plaintiffs were hired and damaged Defendants' relationships with Defendants' prime contractor and the United States Army. (*Id.*)

On February 6, 2013, Plaintiffs filed the current Motion requesting the Court strike Defendants' Answer and Counterclaims and Court issue sanctions against Defendants. (Doc. 26, 27.) Plaintiffs argue that Defendants have unnecessarily and unreasonably multiplied the proceedings by asserting counterclaims the Court barred in the previous action and that are also barred by the language in Paragraph Ten of the term sheet. (Pls.' Mem. at 11.) Plaintiffs contend Defendants' tort counterclaims should again be barred in the current action, (*Id.* at 7.), and that Defendants should be sanctioned pursuant to 28 U.S.C. § 1927 for "taking the Court's time with this motion." (*Id.* at 11.) Defendants argue that the parties failed to reach a settlement agreement due to Plaintiffs' attempt to add additional terms to the agreement after the signing of the term sheet, rendering the term sheet unenforceable. (Defs.' Opp'n Pls.' Mot. Strike Defs.' Answer and Countercls. and for Sanctions at 4-6, Doc. 40 ["hereinafter Defs.' Opp'n"].) Defendants further argue that their tort counterclaims are not barred by the prior action and that sanctions should be denied because their conduct is not the type of "vexatious conduct" required for an award of § 1927 sanctions. (*Id.* at 7-10.)

## II. STANDARD OF REVIEW

### A. *Motion to Strike*

Rule 12(f) of the Federal Rules of Civil Procedure allows the Court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous

matter," by its own choice or in response to a motion from one of the parties. Fed. R. Civ. P. 12(f). However, such action by a court is a disfavored and "drastic remedy," especially since a motion to strike is often a tactic by the movant to delay proceedings. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). In reviewing a motion to strike, a court must "must view the pleading under attack in a light most favorable to the pleader." *Racick v. Dominion Law Assocs.*, 270 F.R.D. 228, 232 (E.D.N.C. 2010) (quoting *Clark v. Milam*, 152 F.R.D. 66, 71 (S.D.W. Va. 1993)). Instead of granting a motion to strike, a court normally allows a defendant to amend an insufficient answer. *Id.*

### B. Request for Sanctions

Federal law provides that "any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (2012). The statute is designed to "limit[] the abuse of court processes." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). A court decides the propriety of a § 1927 sanction based "on the conduct of the litigation and not on its merits." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999). The Fourth Circuit requires a finding of bad faith to substantiate the imposition of § 1927 sanctions. *McKenzie v. Norfolk S. Ry. Co.*, Nos. 10-1829, 11-1365, 2012 WL 5860932, at *1, *4 (4th Cir. Nov. 20, 2012).

### III. ANALYSIS

The Court denies Plaintiffs' Motion to Strike Answer and Counterclaims and for Sanctions because Defendants' pleading was permitted by law and was not in bad faith. The term sheet signed by both parties that summarized the framework of a possible settlement was not a binding contract under Virginia law. Furthermore, Defendants' counterclaims are not

6

estopped by the claim preclusion doctrine. In addition, the Court does not find that Defendants filed their counterclaims with improper motives or intent to abuse the court system worthy of sanctions. The Court explains each of these reasons below.

### A. The Parties' Term Sheet is Not a Binding Agreement

The Court holds that Plaintiffs' Motion to Strike Defendants' Answer and Counterclaims and for Sanctions is denied. The Defendants' counterclaims should not be stricken by the parties' term sheet listing the provisions of a possible, future settlement because this document is not a binding contract. Additionally, the Court will not enforce individual provisions of an incomplete settlement agreement.

Agreements to reach an agreement do not bind the parties by any of the terms in the agreement. On this point, the Court finds instructive the decision in *Virginia Power Energy Marketing, Inc. v. EQT Energy, LLC*, No. 3:11-CV-630, 2012 WL 2905110, at *1 (E.D. Va. July 16, 2012). In *Virginia Power*, the issue was whether the Court should enforce a Letter of Intent for the purchase of natural gas capacity. *Id.* at *2-3. Both parties in *Virginia Power* signed the agreement even though the purchase price for the natural gas had yet to be definitively established. *Id.* at *3. The parties agreed to set the purchase price at the lower of either a specific rate defined in the Letter of Intent or a rate to be determined in external negotiations between the defendant and a third party. *Id.* Market forces intervened, making neither rate appropriate in the view of the defendant, who disavowed the Letter of Intent. *Id.* In refusing to enforce the Letter of Intent, the Court held that "[a] letter of intent or any other writing in which the formal terms of a future transaction or later, more formal agreement are set out is presumed to be an agreement to agree rather than a binding contract." *Id.* at *4. The Court reasoned that although parts of the agreement were "very detailed," the agreement "describe[d] the terms of a

7

future transaction" and was, therefore, an agreement to agree, not a valid contract. *Id.* at *5, 8. *See also Kay v. Prof'l Realty Corp.*, 281 S.E.2d 820, 822 (1981) (holding that "the agreement 'to negotiate a settlement' constituted nothing more than an agreement to agree upon a settlement at a later date").

The term sheet before the Court, describing provisions that could be included in a future settlement agreement, is neither binding nor enforceable. In the term sheet, all parties stated they would put forth "their best efforts" in the next thirty days to reach a settlement. In addition, Paragraph Ten of the term sheet provided that if a settlement agreement was not finalized within thirty days, "all parties agree[d] to refile only the currently operative pleadings . . . and to stipulate to the Court that . . . the case is trial-ready." The initial paragraph of the term sheet describes all of the following terms as "the parameters of the terms on which the parties . . . *intend to settle* this case" (emphasis added). This language is clearly indicative of an unenforceable "agreement to agree," notwithstanding Plaintiffs' possible intentions. As with the Letter of Intent in *Virginia Power*, the term sheet here merely set forth the provisions of a future agreement, not a binding contract. Plaintiffs fail to cite to any case refuting this view.

In addition, a contradiction arises in the pleadings as to whether a term Plaintiffs wanted to include—Defendant O'Brien's personal financial guarantee of the settlement—would have been a part of the term sheet or the settlement agreement. However, this is a moot point. If the additional term were to be added to the term sheet, as Defendants argue, it would be "an effort . . . to impose an undisclosed condition" upon the term sheet and would be valid grounds for Defendants to renounce the term sheet. *Montagna v. Holiday Inns, Inc.*, 268 S.E.2d 838, 845-46 (1980). Alternatively, even if the Court were to ignore precedent and declare the term sheet enforceable, Plaintiffs' insistence on the inclusion of this term into a settlement agreement, as

well as Defendants' subsequent refusal to agree to the term, ended settlement negotiations. Thus, the term sheet is not a binding contract in either circumstance, as no meeting of the minds occurred with respect to the term sheet and no actual settlement agreement was formed.

The Court will not carve out and enforce Paragraph Ten of the term sheet, which limited the scope of future litigation in the event the parties did not reach a settlement agreement. The Fourth Circuit explained that "it is clear that the district court only retains the power to enforce *complete* settlement agreements; it does not have the power to impose, in the role of final arbiter, a settlement agreement where the was never a meeting of the parties' minds." *Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983) (emphasis in original). As discussed above, this term sheet cannot be a complete settlement agreement due to the lack of agreement on the final terms, including the contentious provision regarding Defendant O'Brien's personal guarantee of the settlement. No meeting of the minds could have occurred as to the material provisions of the agreement, since Plaintiffs' insistence on its presence, and the subsequent breakdown of settlement discussions, demonstrates its materiality. Therefore, it is not within this Court's authority to enforce only Paragraph Ten of the term sheet.

### B. The Court's Prior Ruling Does Not Bar Defendants' Counterclaims

The Court also holds that its rulings in the First Lawsuit, concerning Defendants' ability to bring counterclaims in tort, do not preclude Defendants from alleging tort counterclaims in the present case.

The doctrine of claim preclusion bars claims that were raised or could have been litigated in a prior action, but only in certain circumstances. *Pittston Co. v. United States*, 199 F.3d 694, 704 (4th Cir. 1999). Claim preclusion requires the presence of three elements. *Id.* First, the claims in the first and second matters must be based upon the same cause of action. *Id.* Second,

the parties must be identical or in privity in the two matters. *Id.* Third, "the prior judgment

[must have been] final and on the merits . . . in accordance with the requirements of due

process." *Id.* In *Pittston*, the plaintiff asked the district court to determine whether the plaintiff's

participation in a previous action, seeking judicial review of the implementation of a federal law,

precluded his later argument challenging the constitutionality of the same law. *Id.* The district

court ruled that plaintiff's challenge was precluded because "Pittson 'could have...raised' that

claim in [the prior] case." *Id.* at 700. The Fourth Circuit overturned the district court's decision

because only two of the three required elements of the claim preclusion doctrine were met. *Id.* at

704, 705.

   Similarly, the Court finds here that only two of the three elements exist because the

previous bar of Defendants' tort counterclaims was for procedural, rather than meritorious,

reasons. As Plaintiffs stated in support of the instant motion, "the Court held that Tamerlane had

to limit itself to contract-based claims based on its own, chosen strategy and *the possible effect of

injecting tort claims late in the process*" (emphasis added). (Pls.' Mem. at 2). The Court's

decision in the prior action reflected its desire to preserve an orderly and fair process for all

parties, not a decision on the merits of Tamerlane's tort counterclaims. Therefore, the

requirement of a final, prior judgment on the merits does not exist here. Accordingly, the Court

will not apply claim preclusion to bar Defendants' counterclaims in tort.

### C. Defendants Do Not Exhibit Bad Faith Worthy of Sanctions

   The Court denies Plaintiffs' request for sanctions because the Court does not find that

Defendants' filing of an Answer including Defendants' tort counterclaims is "vexatious conduct"

worthy of sanctions. Fourth Circuit explained in *McKenzie* that "this Circuit requires a finding

of bad faith prior to the imposition of sanctions pursuant to [28 U.S.C.] § 1927." *McKenzie*,

2012 WL 5860932, at *4. "'Vexatious' conduct involves either subjective or objective bad faith." *U.S. for Use and Benefit of Union Light & Power Co. v. CamCo Const. Co.*, 221 F. Supp. 2d 630, 634 (D. Md. 2002). In the present case, Defendants have not exhibited the alleged "vexatious conduct" by filing an answer in this action that includes their tort counterclaims. As stated above, the term sheet provision restricting Defendants from filing an answer with their tort counterclaims is unenforceable. In addition, Defendants' tort counterclaims are not claim precluded. The Court finds nothing in Defendants' Answer to be in bad faith. Therefore, sanctions are not appropriate.

### IV. CONCLUSION

For the foregoing reasons, the Court denies Plaintiffs' Motion to Strike Defendants' Answer and Counterclaims and for Sanctions. Defendants' counterclaims are not barred by the parties' term sheet because the term sheet is not binding and enforceable. Nor are the counterclaims here barred by claim preclusion because the Court's decision to dismiss the same counterclaims in the parties' prior action was based on procedural, rather than substantive, grounds. Furthermore, sanctions are not appropriate here, as Defendants' filing of its Answer and Counterclaims was not in bad faith. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Strike Defendants' Answer and Counterclaims and for Sanctions (Doc. 26) is **DENIED**.

The Clerk is directed to forward a copy of this Order to counsel of record.

**IT IS SO ORDERED.**

ENTERED this 29th day of March, 2013.

Alexandria, Virginia
3/29/2013

_____/s/_____
Gerald Bruce Lee
United States District Judge